**Ailish Nic PHAIDIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–959C.**

United States Court of Federal Claims.

May 5, 1993.

J. Michael Farrell, Philadelphia, PA, for plaintiff.

Julie A. Shubin, Civ. Div. U.S. Dept. of Justice, with whom were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Martha H. DeGraff, Asst. Director, for defendant. Haley D. Collums and Mike Dennis, U.S. Dept. of State, of counsel.

## OPINION

MARGOLIS, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The plaintiff is a citizen of the Republic of Ireland and a former employee of the United States Embassy in Dublin, Ireland. She claims she was unlawfully terminated from her position and seeks damages against the defendant, the United States, for breach of an employment contract and for alleged deprivation of Irish social insurance bene-

fits. The defendant argues that the plaintiff never had an employment contract, that the plaintiff resigned voluntarily, and that this court lacks jurisdiction over plaintiff's other claims. After careful consideration of the record and oral argument, the defendant's motion to dismiss is granted.

## FACTS

The plaintiff, Ailish Nic Phaidin, is a citizen of the Republic of Ireland and worked as a typist and as a clerk for the United States Embassy in Dublin for over ten years, from August 9, 1976 to February 26, 1987. As an embassy employee, she was an employee of the United States Department of State.

The basic facts surrounding Nic Phaidin's departure from her position are not in dispute. Nic Phaidin states that an embassy security officer informed her that she had been disqualified from her position for security reasons, but the officer did not tell her why she was disqualified. The Embassy Administrative Officer told her she would be terminated, and offered her the option of resigning instead of being fired. Nic Phaidin chose to resign.

The inferences to be drawn from the basic facts are disputed. The plaintiff claims that her departure amounts to a constructive discharge, while the defendant characterizes the departure as a voluntary resignation. The plaintiff further claims that she had an implied employment contract with the United States, the terms of which were set forth in the State Department's Interagency Handbook on Foreign Service National Employee Personnel Administration ("Handbook"). She claims that this contract protected her from an arbitrary or capricious separation and that defendant breached the alleged contract.

The defendant denies that the handbook created an employment contract, and insists instead that Nic Phaidin was appointed to her post. The defendant further claims that Nic Phaidin was a "Foreign Service National" ("FSN"), and that this court has no jurisdiction to review dismissals of FSNs. The defendant adds that the security qualifications of foreign service employees such as Nic Phaidin are routinely updated every five years, and Nic Phaidin was disqualified during this routine process.

## DISCUSSION

For the purpose of ruling on a motion to dismiss, unchallenged allegations in the complaint should be construed in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). The burden of proof to establish that this court has jurisdiction is on the plaintiff. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

The jurisdiction of the Court of Federal Claims is limited. The Tucker Act states that this court has jurisdiction over

any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act does not waive the sovereign immunity of the United States; it merely confers jurisdiction when some other authority creates a substantive right to recover money damages. *Testan v. United States,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). A substantive right is said to exist when a statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599, 607 (1967).

Thus, for this court to have jurisdiction over Nic Phaidin's claims, Nic Phaidin must demonstrate either that (1) some legal authority explicitly creates a right for Nic Phaidin to recover money damages, or (2) Nic Phaidin had an express or implied contract with the government.

Plaintiff argues that four sources create a right to recover money damages: (1) the Tucker Act, 28 U.S.C. § 1491; (2) the State

Department Interagency Handbook on Foreign Service National Employee Personnel Administration, section 13.1; (3) the Back Pay Act, 5 U.S.C. § 5596; and (4) the United Nations Universal Declaration of Human Rights. G.A.Res. 217A(III), U.N.Doc. A/810 (1948). None of these authorities creates a substantive right for plaintiff to recover money damages. The Tucker Act merely defines this court's jurisdiction and does not create a substantive right. *Testan,* 424 U.S. at 400, 96 S.Ct. at 954. The plaintiff has cited no language in the State Department handbook that in any way creates a substantive right to money damages.

■ The Back Pay Act does not create a substantive right. Nic Phaidin is an FSN, and the employment rights of FSNs are governed by the Foreign Service Act, 22 U.S.C. §§ 3901–4226. No provision in the Foreign Service Act grants FSNs a right to recover back pay or any other money damages for unlawful terminations. Instead, the Foreign Service Act grants the Secretary of State wide discretion to terminate FSNs. 22 U.S.C. § 4012(b). The Act meanwhile creates a grievance procedure and right to judicial review for employees other than FSNs. 22 U.S.C. §§ 4131–4140. Thus, the structure of the Act suggests that Congress intended not to permit FSNs a right to recover damages for employment-related grievances.

The Supreme Court's decision in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), reinforces this conclusion. The Court reasoned that the comprehensive nature of the Civil Service Reform Act indicated that Congress intended that certain civil service employees "should not be able to demand judicial review" for certain types of personnel actions. *Id.* at 448, 108 S.Ct. at 674. Similarly, the comprehensive nature of the Foreign Service Act suggests that Congress intended FSNs not to be able to demand judicial review for terminations of their employment. Two decisions in this court have reached the same conclusion. *Ashgar v. United States,* 23 Cl.Ct. 226, 232 (1991); *Dos Santos v. United States,* 19 Cl.Ct. 681, 686–87 (1990). These decisions and the structure of the Foreign Service Act persuade the court that the Back Pay Act does not waive the United States' sovereign immunity to the plaintiff's claims.

■ The plaintiff also contends that the United Nations Universal Declaration of Human Rights creates a waiver of sovereign immunity. While the Declaration is an authoritative statement of customary international law, it is not a binding resolution. *Siderman de Blake v. Argentina,* 965 F.2d 699, 719 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). The jurisdiction of this court is defined by the Tucker Act, and the Tucker Act contains no language permitting this court to entertain jurisdiction over claims founded upon customary international law.[1] Even if the court could have jurisdiction over such claims, the language of the provisions to which plaintiff cites is hortatory and cannot be fairly interpreted as mandating compensation for violations thereof.[2]

■ The plaintiff next argues that the State Department handbook created an em-

---

**1.** It is doubtful that Congress intended the court to have jurisdiction over claims growing out of customary international law, because the court has jurisdiction neither over claims growing out of foreign treaties, 28 U.S.C. § 1502, nor over claims growing out of international executive agreements. *Hughes Aircraft Co. v. United States,* 534 F.2d 889, 209 Ct.Cl. 446, 468 (1976).

**2.** Plaintiff cites to articles 8, 12, and 22 of the U.N. Declaration, which state:
  Article 8. Everyone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law....

Article 12. No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honour and reputation. Everyone has the right to the protection of the law against such interference or attacks....
Article 22. Everyone, as a member of society, has the right to social security and is entitled to realization, through national effort and international co-operation and in accordance with the organization and resources of each State, of the economic, social and cultural rights indispensable for his dignity and the free development of his personality.

ployment contract.[3] The plaintiff admits that she held her position by appointment. This fact is dispositive. Federal employment is usually governed by statutes and not by employment contracts. *Kizas v. Webster,* 707 F.2d 524, 535 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989); *House v. United States,* 14 Cl.Ct. 32, 35–36 (1987); *Kania v. United States,* 650 F.2d 264, 227 Ct.Cl. 458, 464–65 (1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Shaw,* 650 F.2d 264, 226 Ct.Cl. at 251. In *Hamlet,* the court noted that if a federal employee's employment was by appointment, "a breach of contract action against the government would be precluded." 873 F.2d at 1417, n. 5. Nic Phaidin was appointed to her position. Therefore she cannot have had a contract. The court must dismiss the plaintiff's contract claims for lack of subject matter jurisdiction.

■ The plaintiff also asserts a claim for United States government contributions in her behalf to Irish social insurance. None of the authorities she cites can fairly be read as mandating a payment of money damages. The language in the handbook purportedly supporting the plaintiff's claim states only that the embassy was "urged to explore thoroughly the feasibility of the participation by FSN's in host government social insurance systems." Handbook, § 5.2. This language cannot create an implied contract, nor does it mandate the payment of money damages.

Finally, the plaintiff's claim based on a theory of promissory estoppel is without merit, because, under the Tucker Act, this court lacks jurisdiction over promissory estoppel claims. *Knaub v. United States,* 22 Cl.Ct. 268, 276 (1991).

## CONCLUSION

The court lacks jurisdiction over the plaintiff's claims. Therefore the defendant's motion to dismiss is granted. The clerk shall dismiss the complaint. Each party shall bear its own costs.

---

**3.** The cases that plaintiff cites involved implied employment contracts with private sector employers. Because federal government employment is regulated by statute and because of the doctrine of sovereign immunity, federal employment is different from employment in the private sector. *See Shaw v. United States,* 640 F.2d 1254, 226 Ct.Cl. 240, 251 (1981). Plaintiff's cases are inapposite.