Joseph V. BARTLOMAIN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–383C.

United States Court of Federal Claims.

Dec. 7, 1993.

James D. Ingalls, Cleveland, OH, for plaintiff.

Karren M. Dickson, Washington, DC, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant's motion is granted.

## FACTS

Plaintiff, Joseph V. Bartlomain, began service as an employee of the United States Postal Service in 1961. On March 21, 1986,

plaintiff underwent surgery and remained on sick leave until the Postal Service placed him on non-pay-non-leave status on May 24, 1986. Eleven months later, the Office of Personnel Management (OPM) approved plaintiff's disability retirement application, making the date of his retirement retroactive to May 25, 1986. By the time of plaintiff's disability retirement approval, plaintiff had accrued 1,681 hours of unused accumulated earned sick leave.

Pursuant to the Postal Service's civil service disability retirement regulations, the Postal Service afforded plaintiff the option of using his sick leave prior to separation, or of being separated immediately and using the sick leave to extend the length of service in the annuity computation. In monetary terms, the difference between the two options for plaintiff amounted to an additional $29,000 if the first option were utilized. Of course, plaintiff requested to exercise the first option and use his 1,681 hours of accumulated earned sick leave before officially retiring. However, OPM did not honor plaintiff's request and instead applied his sick leave to the computation of his annuity.

On June 18, 1993, plaintiff filed a complaint in this court alleging that the Postal Service had not paid him his sick leave and failed to properly process his disability retirement papers, depriving him of sick leave income. In his complaint, plaintiff requested relief for breach of promises and policies of defendant on which plaintiff relied and for breach of an implied covenant of good faith and fair dealing, caused by defendant's mishandling plaintiff's retirement application.

### DISCUSSION

In the Tucker Act, Congress defined the jurisdiction of this court, in pertinent part, as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (Supp.IV 1992). However, the Tucker Act alone does not create a substantive right enforceable against the United States for money damages. *El Dorado Springs v. United States*, 28 Fed.Cl. 132, 134 (1993); *Ashgar v. United States*, 23 Cl. Ct. 226, 230 (1991). "It merely confers jurisdiction on the Court of Federal Claims if other authority creates a substantive right to recover money damages." *El Dorado Springs*, 28 Fed.Cl. at 134. The burden of proof in establishing this court's jurisdiction rests with the plaintiff. *Id.; Booth v. United States*, 990 F.2d 617, 619 (Fed.Cir.1993). Therefore, in order for plaintiff to establish the court's jurisdiction over his claims, plaintiff must prove that he had either (1) an express or implied contract with the United States, or (2) some statutorily created right to recover money damages.

In the instant case, plaintiff asserted the existence of two implied contracts with the Postal Service. However, in a subsequent brief, plaintiff retracted any assertions of jurisdiction based on implied contracts with the United States. According to plaintiff, "[a]lthough Plaintiff's complaint was drafted with language used in asserting contract rights, such rights, if any, are not being asserted by Mr. Bartlomain." Pl. Response at 9. In any event, even assuming arguendo that, plaintiff asserted an implied contract with the United States, the court finds that such a contract does not exist. "Public employment does not ... give rise to a contractual relationship in the conventional sense." *Urbina v. United States*, 428 F.2d 1280, 192 Ct.Cl. 875, 881 (1970). Plaintiff cannot rely on an express or implied contract with the government to establish jurisdiction in this court.

Absent from plaintiff's four-page complaint was a cite to statutory authority establishing a substantive right to money damages as a basis for suit against the United States. However, in response to defendant's motion to dismiss, plaintiff asserted that both the Annual and Sick Leave Act, 5 U.S.C. §§ 6301–6373 (1988 & Supp.IV 1992), and the Federal Employees' Retirement System Act,

5 U.S.C. §§ 8401–8479 (1988 & Supp.IV 1992), created such a substantive right. Unfortunately for plaintiff both statutes are inapplicable in his case, and cannot establish jurisdiction.

The Annual and Sick Leave Act does not apply to the Postal Service. *Fleming v. United States,* 30 M.S.P.R. 302, 304–305 (1986). The Postal Service is unique among government agencies because it is "an independent establishment of the executive branch of the Government of the United States" with unique and separate statutory and regulatory directives. 39 U.S.C. § 201 (1988). For example, 39 U.S.C. § 410 states as follows:

(a) Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, ... shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410 (1988). Because the Annual and Sick Leave Act is not an exception listed in subsection (b), it is not a federal law applicable to the Postal Service, and thus can not apply to plaintiff, a Postal Service employee. Moreover, the Annual and Sick Leave Act excludes Postal Service employees. The definitional section of the Annual and Sick Leave Act, 5 U.S.C. § 6301, states that "[f]or the purposes of this subchapter ... 'employee' means ... an employee as defined in section 2105 of this title...." 5 U.S.C. § 6301(2)(A) (1988). Section 2105 states that "[e]xcept as otherwise provided by law, an employee of the United States Postal Service ... is deemed not an employee for purposes of this title." 5 U.S.C. § 2105(e) (1988). Clearly, the Annual and Sick Leave Act does not apply to Postal Service employees. Although the Annual and Sick Leave Act is a money mandating statute for Tucker Act purposes, plaintiff can not rely on that Act to establish jurisdiction in this court.

Plaintiff also relied on the Federal Employees' Retirement System Act (FERS), 5 U.S.C. §§ 8401–8479 (1988 & Supp.IV 1992), to establish jurisdiction. This Act was enacted on June 6, 1986, P.L. 99–335, 100 Stat. 514, which became effective January 1, 1987. However, FERS cannot apply to plaintiff because on the date when plaintiff's retirement became effective, FERS had not yet been enacted. Moreover, section 8402(b)(2)(B) of the FERS Act provides that, "[t]he provisions of this chapter shall not apply with respect to ... any employee having at least 5 years of civilian service performed before January 1, 1987, creditable under subchapter III of chapter 83 of this title."[1] 5 U.S.C. § 8402(b)(2)(B) (1988). By serving as an employee of the Postal Service from 1961 to his effective date of retirement on May 25, 1986, plaintiff performed more than five years of service before January 1, 1987, the date FERS became effective. Consequently, FERS does not apply to plaintiff, and the Civil Service Retirement Act, 5 U.S.C. §§ 8301–8351 (1988 & Supp.IV 1992), does apply, *see* 39 U.S.C. § 1005(d) (1988), however, this court does not have jurisdiction over claims based on the Civil Service Retirement Act. *Rogers v. United States,* 15 Cl.Ct. 692, 698 (1988). Accordingly, plaintiff may not rely on either FERS or the Civil Service Retirement Act to establish jurisdiction in this court.

■ In the alternative, plaintiff requested that the court grant jurisdiction to hear this case under its equity power. The court may exercise limited equity powers as an incident of its general jurisdiction. *Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States,* 174 Ct.Cl. 483, 488, 1966 WL 8850 (1966). However, the court does not have equitable jurisdiction. Apparently, plaintiff confused the court's power to grant an equitable *remedy,* as an incident of the court's general jurisdiction, with the power to grant equitable *jurisdiction.*

■ The general jurisdiction of the Court of Federal Claims is specific. *Phaidin v.*

1. Chapter 83 of Title 5 of the United States Code contains provisions of the Civil Service Retirement Act.

*United States,* 28 Fed.Cl. 231, 233 (1993). Because this court lacks general subject matter jurisdiction over plaintiff's claims, it can neither hear plaintiff's claim nor exercise equitable powers to grant relief.

### CONCLUSION

Because plaintiff failed to prove a contract with the United States, or the application of a statute which created a right for him to recover money damages, plaintiff failed to establish the jurisdiction of this court over his claims. For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1) is granted. The Clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**